Good morning, Your Honors. May it please the Court, I'm Michael Avakian, Counsel for C&C Roofing and Supply Company. This case is, before Your Honors, in an unusual posture in that we have a situation where the remedy that, rather a plenary remedy that the NLRB is seeking, which is enforcement of an order that came through a settlement, must compel the, from our perspective, must compel the violation of immigration remedies or immigration bars to employment, back pay, and reinstatement. What we have is a situation where there were certain charges that were filed with the Labor Board, complaints issued, a settlement occurred. During the course of the settlement, the questions were raised about unauthorized aliens as part of the class of persons that may receive back pay. The immediacy of the question came about in the fall of 2007, approximately two months before Arizona's legal Arizona Workers Act was to go into effect, which also mandated the Arizona employers utilize the federal e-verify system with the Department of Homeland Security. Yes, Your Honor. At the time that your client entered into the settlement, they were aware that they had some illegals in their workforce? They did not, Your Honor. They were not. They may have suspected, but that's about as far as their requirement was to further proceed. When you say the issue was kind of raised during that time, what happened? As you can see from the papers, and we have a motion to supplement the record, which is on file with the court as well and has been submitted to the panel for decision. We have the raising of the issue of the Immigration Act and the Arizona law during the course of the settlement. The resolution from our perspective was in the fact that the board's order that was finally submitted to the board had language that said that CNC would cease and desist from doing the following acts consistent with the National Labor Relations Act. That, from our perspective, confirmed that so long as the board's order was consistent with the NLRA, then it was okay from our perspective because consistent with the NLRA means under the Supreme Court's decision, Huffman Plastic Compound, that back pay and reinstatement cannot be provided to unauthorized workers. But, in fact, the board's order in the terms of the Supreme Court, both in Sure Tan versus NLRB and Huffman Plastics, is that those orders must be conditioned on employees being lawfully in the United States for work. As I see this, it's maybe a timing or just a procedural problem. The board says enter the enforcement order and then there can be supplemental proceedings as to who is entitled to back pay and reinstatement. What's wrong with that? In the context of the Supreme Court's decision in both Sure Tan and Huffman Plastics, they talk about and they specifically have citations to the use of contempt for enforcing cease and desist orders. But particularly in Huffman Plastics, it takes it out of the question of reinstatement and back pay. In other words, it restricts that. But, Your Honor, it asks a fair question, which is what type of order should this court provide in this case? And I think the line of cases from early on, I think from Thompson Products, which is a Sixth Circuit case, indicates that the board has two options. One, it can seek enforcement of its order. And I propose that their timing was they could do it at any time. And their timing was maybe invalid. The other course of action, which is Thompson Products' case and many other circuit court cases, shows that the courts are not the best undertakers of contempt proceedings because the valid courts don't have normal triers of fact and have to employ special masters. And therefore, in many cases, the court will say, Board, go ahead and just issue another complaint for a violation of your order, have a hearing, and bring it back to us that way. And that's why I propose that the court may undertake that sort of directive because I don't believe this court would have the authority to compel C&C into contempt, knowing that part of its order was to tell C&C to violate the IRCA and violate Arizona state law. The issue here is primarily back pay? Back pay and reinstatement. And we now know from some of the record that has developed is that two of the people for back pay have admitted that they're illegal aliens. They refused to sign their I-9 forms and provide the appropriate documentation. Now, let me ask you this question. At the time that these individuals were employed by your client, was your client's state of mind, and at the time they performed the work, was your client's state of mind that they were perfectly lawful and legal employees and there was nothing wrong in employing them? No, Your Honor. The record doesn't ñ there's no record to show that. The record might be able to show that the people provided the Social Security card and a driver's license, which are the only items that were required to be submitted. So in your mind, your client did what it thought was lawful and appropriate at the time in determining whether these people could be employed? That's correct. And then employed them, and then they performed work, and at the time, during the entire time they performed work, your client thought they were perfectly legal employees. That's correct, Your Honor. Okay. And they were paid for those services rendered under normal wage laws. Well, obviously your client conceded that there was some illegal activity by your client. That's why they entered into the settlement. There were questions about contract negotiations and some furnishing of documents. It wasn't, for our purposes, was not in the normal scheme of things worth continuing on for the type of proceedings that we were going to face. But it was also a question, whenever the board seeks back pay, and the Supreme Court has said that, whenever they seek back pay under this statute, they have to consider and condition it upon the other statutes, federal statutes, including the IRCA. And therefore, the court has said it must be conditioned. So at that point in time, we went ahead and we proceeded with the settlement, understanding that it was going to be conditioned on compliance with the IRCA. So now we have admissions from two of the people, plus we have e-verified prohibitions on reinstatement. Yet despite that, the board seeks to have this court compel us to hire unauthorized workers. The board says that there are procedures to make sure that the immigration laws are complied with. I would say that those are your procedures, but those aren't the board's procedures. The board's procedure right now, as it tells the court, is that it was providing no relief under the IRCA to my client, which is inconsistent with the order. Before you get too far down on your time, did you want to talk about the quorum issue? Yes. I think that's a lead-in to the quorum issue, which is whether or not the petition that was filed was filed by the board or by, I'll say, a rogue entity of the board right now, which is the general counsel. The board, since the time of the filing of the petition, has only had two members of the required, of a five-member board, where the statute, Section 3B of the Act, says there must be three for a quorum. We argue that to the court, and it's consistent with what has since happened. The real problem here is that the general counsel of the board, which is a separate entity established by Congress, and he has the power to do all the prosecutions, has now been delegated the authority by an old board that had four members with authority to prosecute and file petitions. The statute, Section 10E of the Labor Act, says the board shall petition. Well, there's no board in effect. There is no client that ought to. At the time the general counsel did it, weren't there three members still on the board? There were not three members. The petition was filed in, I think it was January 25, 2008. The authority granted to the general counsel was at a time when there were three members, and there's an old order, whatever, that says that the board can delegate this type of thing to the general counsel. Your Honor, those seem to be very appealing conditions, but I don't think they are correct. One is the board's minutes in December of 2007, right before the three of their terms were to expire and dropping down to a two-member board, did not rely upon a regulation. In fact, they specifically said that they had done it maybe once or twice before, and therefore they're now specifically doing it in the course of this particular order. If, in fact, it was a fait accompli, it was in effect for years and years and years, they would have referred to that as perhaps authority for doing so. They did not refer to that. And as I set forth in the reply, the regulation has a communication provision in it between the general counsel and the board, referring back and forth to the board what was going on. There was no communication there. Laurel Bay, I think, puts this issue to rest. The two-member board is not lawful, and the petition could not have been filed by the board in these circumstances. Okay. You're a little bit over your time. We'll give you a little bit, maybe 30 seconds for a rebuttal if you feel you need it. Thank you, Your Honor. We'll hear from the board at this time. Counsel? May it please the Court. My name is Robert Englehardt for the National Labor Relations Board. I'd like to begin by just explaining the board's procedures in a normal case, and maybe that can clear up some of the issues. Normally, there are two steps to the board's procedures. There's the first liability step, an unfair labor practice complaint by the general counsel. That is usually litigated completely, and after liability is determined, then there's a compliance hearing to determine who is entitled to back pay or any reinstatement rights. In this case, the company decided to wrap up the entire case, both the liability of the unlawful conduct, the subcontracting, and the remedy, the compliance stage, in one fell swoop with the formal settlement agreement so that it confessed the liability and it agreed to liquidated damages for back pay and reinstatement rights. So normally, if it were just the liability stage, there would be, Your Honor, a separate determination about eligibility under documented worker status of certain individuals in a compliance determination. This Respondent waived that and packaged the whole thing and named the amount of liquidated damages for folks. It's kind of a difficult situation, isn't it? The tough new Arizona law took effect during these proceedings, right? Well, Your Honor, I don't know that it's a tough new Arizona law that changes anything more than the Hoffman Plastics decision. The law provides that if you employ an undocumented worker, the first time there's a fine or something. The second time, you lose your license to do business in the state. And this is an Arizona corporation, right? There's no finding in the settlement agreement that any of these folks are undocumented. The problem where the rubber hits the road for them is the reinstatement provision. And that, Your Honor, we have been sensitive to as we've tried to point out in the brief. Even though they've confessed the liability to reinstatement, if they come forward with evidence that these folks are undocumented, they can bring that to the board and the board will not prospectively require the employer to hire someone who's undocumented. And if the board has deaf ears and is not going to hire them, What is the mechanism for them to bring it forward to the board? It's an informal mechanism, Your Honor, because it would come in the context of an allegation that they had violated, the obligation they have already confessed to reinstate these folks, and it would ultimately proceed in a board application, if the board had deaf ears to their information, to a contempt petition that the board would grant. Would the general counsel in a situation like this have authority to allow some modification of the remedy? Well, indeed, I think that's what I'm suggesting, that at least in terms of the reinstatement obligation, the general counsel, if brought information informally that certain folks aren't documented, would not bring a contempt proceeding. After all, the burden on the general counsel to prevail in contempt is a high one, and the general counsel will not proceed if it doesn't have evidence that there is an obligation to Why does this need to be so complicated? The employers in Arizona are now required to comply with E-Verify. You can tell pretty quickly, certainly within a week or so, who's properly working, who's provided proper information or not. I would submit that it wouldn't be that complicated if that information is brought to the general counsel. The problem in this case is that none of that information was advanced at the time of the settlement, and, indeed, this employer could have said, I don't want to settle the ultimate back pay and reinstatement rights because I think I have questions about their documented status. I will only settle the part of the case that's my liability for the unfair labor practice. But this employer didn't and wrapped it all up in one and confessed liability for the individuals. So the employer has to risk contempt in order to bring it forward to the board? At this stage, for purposes of the reinstatement argument that it may want to make, that certain folks are undocumented, that is the board's position, that they would be subjecting themselves to the board's petitioning. The board would still have the burden to prove in contempt that these folks are documented. Don't agencies of the government talk to each other? Well, of course, Your Honor. And wouldn't, if they processed their employees through E-Verify, wouldn't the Department of Homeland Security know which ones had passed and which ones hadn't? What I'm representing to the Court is that if this order is enforced and the board seeks instatement of the 20 folks that the employer has confessed an obligation to instate, if the employer brings the information forward to the board and finds and the general counsel finds that some of those folks are not documented, it's not going to burden this Court with its time. Why does it have to find anything if another agency of government has made that determination? Well, it has to. The burden is still on the employer to bring that information to the board. And so it's the employer's burden at that point to bring the information to the board. And the board, before it brings a contempt proceeding on any individual, will look at that information and it will either acknowledge that it's credible. Are you prepared to represent to this Court that upon proper proof of the undocumented status of workers that would ordinarily be subject to the reinstatement order, that the board will not or the general counsel will not seek contempt sanctions? My only concern about the phrasing is the phrase, on proper proof. The general counsel might deem what this Court ultimately decides is proper proof, not proper proof. And so a contempt petition may be filed. But that's the adjudicate to process in contempt. So the answer to my question is no. You can't make that representation to this Court at this time. In stark terms like that, we've held open in our brief that the general counsel will look at the offer of proof and consider that before bringing a contempt proceeding, Your Honor. What if it happens that out of the 17 that are thought to be undocumented, that only eight of them are? All right? Is the employer in contempt because of not reinstating the others? The employer would be in contempt for not reinstating the – if, in your example, the nine that are documented, yes. They've confessed an obligation to reinstate a group of, if you – in your example, 17. If eight are undocumented and they bring information to the general counsel that they shouldn't have to fulfill that obligation, that's one thing. But they haven't done anything with respect to the nine, and they are obligated to reinstate them. Well, the employees are in a difficult situation, too, aren't they? They have Fifth Amendment rights, don't they? Yes. Do they have to confess to a crime to satisfy your client, to satisfy the board? No. They've already been given reinstatement rights by this order that's adopted. I mean, you say we have to have proof that they're undocumented. And the employer is obligated. I don't know any lawyer in the world if one of these workers went to individual counsel and asked for advice that would make that kind of admission. That's why the burden always has remained on the employer to bring forward proof of the undocumented. I think we understand the leviathan rules you have to work under. Do you want to talk about the quorum issue? Sure, I'd be glad to. The quorum issue that's been referred to in this court through the 20HA letters is the board's authority to issue decisions to two members of a three-member – out of a three-member group. For example, the Laurel Bay is heavily relied on. If Laurel Bay were applicable to this situation, the court wouldn't have even heard board counsel argue that case. And that's the proposition that's being advanced by the employer here. The delegation that the board is standing in front of you today comes from a 1955 regulation where the board has delegated to the general counsel in all of its orders routine enforcement procedures which don't require individual board approval. That's different from the 2007 delegation where certain injunctive authority petitioning the Supreme Court, that did require under longstanding board precedent individualized board determination. And in anticipation of going down to two members, that too was delegated in 2007. But I am not here today under that authority. I am here today under the authority of a 1955 regulation. Would this lie in the face of the D.C. Circuit's ruling? I mean, would it put us in conflict with them? Not at all, Your Honor. Because as I said, the D.C. Circuit, if they had ruled as broadly as the employer asks, wouldn't have even listened to board counsel argue that case. There's no question that board counsel would say that. We listen to argument on a lot of cases. One side is weaker than the other. I understand. But they would have written it in a way that said not only is the board not empowered to issue a decision with two members, but the board isn't empowered to even appear here to ask for enforcement of that. And that's not been the argument. And no court's ever held that. Do I understand correctly that the only way that the employer here can contest this is in the nature of a contempt citation? There's no other way that you can have a factual hearing as to whether these people are or are not illegal aliens? The board's procedure was to provide such a hearing, but they waived it by entering into a compliance agreement that wrapped up the hearing. Well, let me look at it now. Now there is no formal hearing procedure left before the board. They would go to the general counsel, not with respect to the liability, the money liability. That's been settled, and we're not opening that up to assertions that some folks are undocumented, because that's been an established monetary liability. It's not even properly called back pay at this point, because they told it for settlement. But for purposes of reinstatement, respectively, the board's not going to require the employer to hire, put in job, somebody who's not documented. So they can bring that information to the board, and the board will consider that before petitioning this Court for a contempt order. And that's discretion. Yeah. But the Court ultimately holds all the ability to enforce that. Okay. You're a little over your time. Thank you for your argument. Thank you. Rebuttal? I'll give you one minute. Thank you, Your Honor. Just three points. One is on the 2007 delegation that deals with the board, I refer the Court, of course, to Section 10A of the Act, which says it's the power of the board to petition. That power does not reside in the General Counsel, and there's nothing in the statute that says it can be delegated to the General Counsel. Well, it's used under the 1956 or 55 or the 2007. I don't think it comes under the 2007. Well, I don't think the board cannot delegate during a course when there's only two members acting, powers that go beyond its full powers. And I think in the course of this entire proceeding, there's been no communication between the two sitting members of the board and the General Counsel about what the General Counsel is doing in the courts. That just can't be what Congress intended in Section 3B of the Act and Section 10 as well. With respect to waiving the IRCA violations, there is nothing the employer can do to waive violations of IRCA. It cannot violate IRCA. And the LRB cannot violate IRCA. And as Judge Hawkins, you indicated, the court should not be in a position of ordering the employer to violate IRCA as well as part of this situation. In the last exhibit of our motion to compel, I'm sorry, motion to supplement the record, we have E-Verify documents from the Homeland Security attached, so the court can see that we have actual documentation. But the regional director refuses to acknowledge the efficacy of those Department of Homeland Security results. And that is causing the problem here. They will not recognize it. And there's no board to go to to ask the question, try to stop. Talk to your client. Try to stop. Lastly, I'd like to give the court the sight to that Thompson Products case dealing with the alternative. Was that in your brief? I'm not sure if it was. Why don't you give the deputy clerk a gum sheet and citation to the case, and a copy will be provided to counsel for the board, and the court can consider it. I'll give my copy to the court. I have one question to make sure. There is no problem with regard to the back pay or the settlement for the back pay. Is that correct? It's only the reinstatement? I believe the back pay question is in flux as well. Because the back pay that was signed up to in the settlement was back pay that was unearned money. It was not earned money. They were paid for the work they performed. So during this period where they might have been discharged for unlawful purposes, and that's what we're trying to figure out the back pay, what we call back pay, is unearned income. And that's the question. Is that unearned income payable under the Immigration Act? And makes no difference that a lump sum was settled on? Well, I think it stops litigation. It specifies what that amount could be if, in fact, it's consistent with the policies of the Act, which is set forth in the board's order. Okay. Thank you, Your Honor. Thank you. Thank both sides for their argument. The case that's argued will be submitted for decision.
judges: Hug, Fletcher B. , Hawkins